UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELTON L. TAYLOR,<br><br>Plaintiff,<br><br>v.<br><br>HARISHKUMAR PATEL, et al.,<br><br>Defendants. | Case No. 1:14-cv-01754-DAD-MJS (PC)<br><br>**FINDINGS AND RECOMMENDATION TO DENY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**(ECF No. 36)**<br><br>**FOURTEEN DAY OBJECTION DEADLINE** |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. This action proceeds on Plaintiff's first amended complaint against Defendants Drs. Harishkumar Patel and Richard Le for medical indifference in violation of the Eighth Amendment of the United States Constitution. (ECF No. 9.)

Before the Court is Defendants' November 7, 2016 motion for summary judgment. (ECF No. 36.) On March 17, 2017, Plaintiff filed an opposition. (ECF No. 44.) On March 24, 2017, Defendants filed a reply. (ECF No. 46.) The matter is submitted. Local Rule 230(*l*).

Also on March 17, 2017, Plaintiff filed, under separate cover, his Statement of

Disputed Facts (ECF No. 43) and a collection of exhibits in support of his opposition (ECF No. 45.) On March 24, 2017, Defendants filed, along with their reply, objections to portions of Plaintiff's exhibits. (ECF No. 46-1.) Plaintiff did not file a response to these objections or seek leave to.

## I. Objections to Plaintiff's Declaration

Defendants object to the admission of four paragraphs in Plaintiff Delton Taylor's Declaration (ECF No. 45 at 113). They also object to the admission of Plaintiff's Exhibit N (ECF No. 45 at 110-12).

The Court addresses each objection in turn.

A. Plaintiff declares: "Upon information and belief, I believe that Dr. Patel stopped my prescription for Tylenol 3s." (Taylor Decl. Paragraph 33.)

Defendants' objection that this statement is not based on Plaintiff's personal knowledge as required by Fed. R. Evid. 602, is overruled. Although Plaintiff attributes the declaration to "information and belief", there is competent evidence before the Court, including Dr. Patel's own examination notes (Patel Decl. Ex. 2), that support this claim and it does not appear to be disputed.

B. Plaintiff declares: "Dr. Le continued the treatment initiated by Dr. Patel and did not make an independent effort to understand or treat my pain." (Taylor Decl. Paragraph 41.):

Defendants' objection that this statement also lacks personal knowledge is overruled as to Plaintiff's own recollection of his interaction with Dr. Le and the latter's comments, if any, but sustained as to Plaintiff's attempt to testify as to Dr. Le's subjective state of mind.

C. Plaintiff declares: "My 602 [submitted on February 9, 2014] was the result of Dr. Patel's (1) refusal to review my medical records of my previous care at Kern Valley Medical Center (KVMC), (2) his denial of ongoing physical therapy, and (3) his refusal to modify the drug-based pain management therapy given the

2

prescribed drug's ineffectiveness in mitigating my pain, and Dr. Le's refusal to intervene in Dr. Patel's treatment of me." (Taylor Decl. Paragraph 49.)

Defendants object to Paragraph 49 as hearsay. Fed. R. Evid. 801, 802. It appears this statement merely reflects what Plaintiff was thinking or believed at the time he filed his 602 and thus the motivation for the 602. As such, it is not hearsay. However, the Court is unaware of any basis upon which Plaintiff's motivation for filing the grievance might be relevant to the issues now before the Court, and so finds the statement to be irrelevant.

D. Plaintiff declares: "The 602 was partially granted on March 12, 2014 by Dr. A[.] Klang. Dr. Klang [] granted my request for different pain medication because the medications Dr. Patel ordered were ineffective and he refused to prescribe stronger medication." (Taylor Decl. Paragraph 51.)

Defendants object that this statement misstates the evidence and constitutes hearsay. The first sentence in the statement appears to be a matter of record not in dispute (see March 12, 2014 Institution Response to Plaintiff's 602 (ECF No. 45 at 94)) and certainly within Plaintiff's personal knowledge; the objection therefore is overruled as to that portion of the statement. The hearsay objection is sustained as to the remainder of the statement if it is based on statements Plaintiff claims were made by Dr. Klang; otherwise it is inadmissible speculation.

E. Plaintiff offers in evidence a printout from an internet site comparing the different purposes and functions of an X-ray and an MRI. (Exhibit N.)

Defendants object that the document is hearsay. The Court agrees. Defendants' objection is sustained. (However, that X-rays and MRIs function in different ways and produce different results is a fact not reasonably in dispute and one which the Court will judicially notice.)

3

## II. Legal Standard for Summary Judgment

Any party may move for summary judgment, and "[t]he [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). If the movant will have the burden of proof at trial, it must demonstrate, with affirmative evidence, that "no reasonable trier of fact could find other than for the moving party." Id. at 984. In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." Id. (citing Celotex, 477 U.S. at 323). Once the moving party has met its burden, the nonmoving party must point to "specific facts showing that there is a genuine issue for trial." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)).

In ruling on a motion for summary judgment, a court does not make credibility determinations or weigh evidence. See Liberty Lobby, 477 U.S. at 255. Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. Only admissible evidence may be considered in deciding a

motion for summary judgment. Fed. R. Civ. P. 56(c)(2). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).

Local Rule 260(b) requires that "any party opposing a motion for summary judgment . . . reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied on in support of that denial." Here, Plaintiff presents his own "Statement of Disputed Facts" (ECF No. 43) to identify facts he disputes, but he does not say why he disputes them or cite to portions of the record that support a different interpretation of the facts. Plaintiff did file a sworn declaration setting forth his own version of the facts, but he does not therein cite to portions of the record he believes supports those facts. (Decl. of D. Taylor in Supp. of Opp'n (ECF No. 45 at 113-22).)

However, the body of Plaintiff's opposition brief refers to portions of the record, such as his own deposition testimony, his declaration, and the complaint, which he believes support his interpretation of the facts. Thus, wherever a fact is brought into dispute by facts presented in Plaintiff's verified complaint and sworn opposition, declaration, and deposition testimony, the latter facts will be considered here insofar as they otherwise are competent and material. See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) ("[B]ecause [Plaintiff] is pro se, we must consider as evidence in his opposition to summary judgment all of [his] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [he] attested under penalty of perjury that the contents of the motions or pleadings are true and correct."); Johnson v. Meltzer,

134 F.3d 1393, 1399-1400 (9th Cir. 1998). All other of Defendants' facts are deemed undisputed.

### III. Facts

Unless otherwise stated, all facts reflected below are found to be undisputed.

#### A. History of Plaintiff's Back Pain

In 2010, at Kern Medical Center, Plaintiff had surgery on his lower back to treat an infection in his spine. (Taylor Dep. (ECF No. 45 Ex. A) 10:21-11:17 & 12:2-5.) He thereafter underwent post-surgery check-ups and occupational physical therapy. (Id. 11:22-12:10.) He was prescribed morphine and a muscle relaxant. (Id. 12:11-19.)

In 2013, Plaintiff, detained at the Kern County Jail Lerdo Facility, began to experience stabbing lower back pain and numbness radiating down into his thighs. (Id. 12:20-24, 14:11-22, & 26:16-27:9.) He rated the pain a "9" on a scale of one through ten. (Id.) He was prescribed a muscle relaxant and Tylenol 3. (Id. 12:25-13:2.) No X-rays or diagnostic studies were performed at the jail. (Id. 13:3-5.)

#### B. WSP and Dr. Patel

Plaintiff arrived at Wasco State Prison ("WSP") on or about October 13 or 18, 2013. (Taylor Dep. 8:17-23; Decl. of Dr. B. Barnett (ECF No. 36-2 Ex. C) ¶ 8.) On or about October 30, 2013, he was seen by Dr. Soleimani for low back pain as severe as it had been when Plaintiff was in the Kern County Jail. (Taylor Dep. 9:16-10:11, 27:12-15; Decl. of Dr. H. Patel (ECF No. 36-2 Ex. A) ¶ 2; Barnett Decl. ¶ 8.) Dr. Soleimani referred Plaintiff for a lower spine X-ray, prescribed Tylenol 3, Naproxen, and Robaxin, and ordered a back brace. (Taylor Dep. 10:12-19; Patel Decl. ¶ 2; Barnett Decl. ¶ 10.) X-rays on November 4, 2013 showed severe degenerative changes at L4-5 and L5-S1. (Compl. (ECF No. 9) Ex. 1-A; Patel Decl. ¶ 2; Barnett Decl. ¶ 10.) The medications did little to alleviate Plaintiff's back pain. (Decl. of D. Taylor (ECF No. 45 at. 113-22) ¶ 3.)

Plaintiff first saw Defendant Dr. Patel on November 25, 2013. (Taylor Dep. 18:11-20:16, 21:1-4; Taylor Decl. ¶ 13; Patel Decl. ¶ 2.) Plaintiff explained to Dr. Patel that

6

"each day it was getting harder . . . to get around." (Taylor Dep. 20:3-6.) Plaintiff says he tried to show Dr. Patel his Kern Medical Center records, but Dr. Patel refused to look at them, stating there was "nothing wrong" with Plaintiff. (Id. 16:8-14, 18:22-19:2.) Plaintiff does elsewhere concede, however, that Dr. Patel ordered Plaintiff's medical records. (Id. 16:11-17; 19:3-12.) Plaintiff states he told Dr. Patel that his current pain medications were ineffective (Taylor Decl. ¶ 13), but he did not request a different medication at the time. (Taylor Dep. 20:11-13.)

Dr. Patel continued Plaintiff's prescriptions for Tylenol 3 and Naproxen (Taylor Dep. 20:7-10, 21:23-25; Patel Decl. ¶ 2) and referred Plaintiff for physical therapy; Plaintiff attended eight sessions between January 23, 2014 and February 20, 2014. (Patel Decl. ¶¶ 2-3.)

Plaintiff benefitted from the physical therapy. (Taylor Dep. 25:2-10.) However, he asked for additional therapy, and the physical therapist reportedly asked Dr. Patel for another referral, but Dr. Patel refused. (Id. 25: 11-18.)

On November 25, 2013, Plaintiff requested referral to a spine specialist, and Dr. Patel refused. (Taylor Dep. 20:23-21:4, 22:21-23:2.)

On January 3, 2014, Plaintiff saw Dr. Patel again and requested stronger pain medication. (Taylor Dep. 22:1-4; Patel Decl. ¶ 3.) Dr. Patel claims he told Plaintiff he had to first conduct a physical examination; however, Plaintiff refused to submit to the exam and left the room. (Patel Decl. ¶ 3.) Plaintiff's recollection differs. Plaintiff states that when he entered Dr. Patel's office, Dr. Patel repeated that there was "nothing wrong" with Plaintiff. (Taylor Dep. 23:15-18.) When Plaintiff again attempted to show Dr. Patel his medical records, Dr. Patel refused to look at them, stating "Well, if you have another operation, there's—basically you won't get better." (Id. 23:15-23.) Plaintiff protested that his pain was affecting his everyday activities and that he needed to "see someone" for it. (Id.) Ultimately, since Plaintiff "felt that [Dr. Patel] was more or less blowing [him] off to do nothing for [him]," he decided to terminate the visit. (Taylor Dep.

7

24:2-7.) Dr. Patel discontinued all of Plaintiff's medications except for Naproxen (Plaintiff's prescription for Elavil was discontinued at Plaintiff's request). (Id. 22:1-20.) Without Tylenol 3, Plaintiff was left with severe pain. (Taylor Decl. ¶ 32.) Plaintiff went without Tylenol 3 for over one month. (Taylor Decl. ¶ 34.)

On March 10, 2014, Plaintiff saw Dr. Patel in response to his inmate health care appeal ("602"). (Taylor Dep. 24:8-16; Patel Decl. ¶ 4.) According to Dr. Patel, Plaintiff wanted a referral to a spine specialist and a prescription for a stronger pain medication. (Patel Decl. ¶ 4.) Dr. Patel states he reviewed medical records from Plaintiff's 2010 surgery. (Id.) Dr. Patel agreed to prescribe a stronger pain medication, Tylenol 3, but denied the referral to a spine specialist because he did not believe it to be medically necessary or that surgery would improve Plaintiff's condition. (Id.; Patel Decl. Ex. 3.)

According to Plaintiff, Dr. Patel noted that Plaintiff was walking slowly. Dr. Patel viewed Plaintiff's lower spine; Plaintiff interprets this to mean that Dr. Patel looked at previously taken X-rays. (Taylor Dep. 24:17-25:1.) Plaintiff states Dr. Patel "never" conducted a physical examination of Plaintiff. (Taylor Dep. 33:24-34:3.)

**C.     Dr. Le**

On February 7, 2014, Plaintiff saw Dr. Le in response to Plaintiff's request for a stronger pain medication. (Taylor Dep. 31:7-16; Decl. of Dr. Le (ECF No.36-2, Ex. B) ¶ 2.) Nursing staff asked Dr. Le if Plaintiff could have Tylenol 3. (Le Decl. ¶ 2.) Plaintiff only saw Dr. Le once. (Taylor Dep. 32:6-11; Le Decl. ¶ 2.) Dr. Le reports that Plaintiff had no difficulty walking and no functional limitations on examination. (Le Decl. ¶ 3.) Dr. Le reviewed Plaintiff's "medical file" and the November 2013 spine X-ray. (Id. ¶¶ 2-3.) Dr. Le believed Plaintiff did not need Tylenol 3, but continued him on Naproxen. (Id. Decl. ¶¶ 2-3.)

Plaintiff disputes Dr. Le's assessment of his physical mobility. According to Plaintiff, Dr. Le instructed Plaintiff to lay on the examination table on his back with his legs hanging off the table and then raise his legs; when Plaintiff was unable to fully raise

8

his legs because of pain, Dr. Le said, "Well, there's no reason for you not to be able to raise your legs this high." (Taylor Dep. 32:25-33:12.) Plaintiff states Dr. Le refused to refer him to a specialist and refused to look at Plaintiff's medical records or his X-ray. (Id. 32:14-24; 33:19-23; Taylor Decl. ¶ 40.)

### D. Further Treatment of Plaintiff's Back

On March 28, 2014, Plaintiff was transferred to Centinela State Prison, where he saw a Dr. Ortega. (Taylor Dep. 34:4-9; Barnett Decl. ¶ 17.) Dr. Ortega tapered Plaintiff down to a lower dose of Tylenol 3 and ordered non-narcotic medications and physical therapy. (Taylor Dep. 34:18-22; Barnett Decl. ¶ 17.) On April 11, 2014, Dr. Ortega ordered another X-ray; it showed no change from the films taken November 4, 2013. (Taylor Dep. 34:13-14; Barnett Decl. ¶ 18.) On May 6, 2014, Plaintiff complained that his low back pain was worsening and that he was not tolerating the non-narcotic pain medications. (Barnett Decl. ¶ 19.) Dr. Ortega ordered an MRI of Plaintiff's spine. (Taylor Dep. 34:13-14; Barnett Decl. ¶ 18.) The MRI showed degeneration at L3/4, L4/5, and L5/S1 with disc bulges at L2/3, L/3/4, L/4/5, and L5/S1. (Taylor Dep. 35:15-16; Barnett Decl. ¶ 20.) A second MRI, performed in August 2014 at the request of consulting neurosurgeon Dr. Yoo, suggested the possibility of an infection in Plaintiff's spine. (Taylor Dep. 36:2-3; Barnett Decl. ¶ 21.) Dr. Yoo believed it unlikely Plaintiff had an infection, but in an abundance of caution performed surgery and fused lumbar levels L4-L5 in August 2014. (Taylor Dep. 36:9-11; Barnett Decl. ¶ 22.) Dr. Yoo found no sign of infection. (Barnett Decl. ¶ 22.) Plaintiff reports that he "feel[s] a lot better" and is in "a lot less pain" following surgery. (Taylor Dep. 37:5-8.) Plaintiff still uses a cane post-surgery, but was told his mobility would improve over time. (Id. 37:20-25.)

## IV. Analysis

### A. Medical Indifference Legal Standard

The Eighth Amendment entitles prisoners to medical care, and a prison official violates the Eighth Amendment when he acts with deliberate indifference to an inmate's

serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104(1976); Peralta v. Dillard, 744 F.3d 1076, 1081 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). "A medical need is serious if failure to treat it will result in significant injury or the unnecessary and wanton infliction of pain." Peralta, 744 F.3d at 1081 (citing Jett, 439 F.3d at 1096). Examples of a serious medical need include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014).

A prison official shows deliberate indifference to such a need if he "knows of and disregards an excessive risk to inmate health." Peralta, 744 F.3d at 1082 (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)). This "requires more than ordinary lack of due care." Colwell, 763 F.3d at 1066 (citing Farmer, 511 U.S. at 835). The prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Colwell, 763 F.3d at 1066. Prison officials may demonstrate deliberate indifference when they "deny, delay, or intentionally interfere with medical treatment," and prison doctors can be deliberately indifferent in their provision of care. Id.

A prison doctor's provision of care constitutes medical indifference where the doctor ignores a previous treating physician's instructions, knows that a course of treatment was ineffective but continued it anyway, or delays necessary treatment without justification. See Jett, 439 F.3d at 1097-1098; Wakefield, 177 F.3d at 1165; Estate of Prasad ex rel. Prasad v. Cty. of Sutter, 958 F.Supp.2d 1101, 1112-1113 (E.D. Cal. 2013). Purposefulness can be inferred where a prison doctor is aware of the extent of the inmate's pain but declines to do anything to improve the inmate's situation. See Jett, 439 F. 3d at 1098. An inmate's harm need not be substantial, id. at 1096 (citing McGuckin v. Smith, 974 F.2d 1050, 1062 (9th Cir. 1992)), and even brief periods of

10

unnecessary pain can give rise to an Eighth Amendment claim. See Clement v. Gomez, 298 F.3d 898, 904-905 (9th Cir. 2002) (four-hour wait for pepper-sprayed inmates to shower could be basis of medical indifference claim); Scott v. MTA Keller, No. 2:07-cv-00184 WL 3635728, at *4 (E.D. Cal. Sept. 14, 2010) (two-day delay in treating hand injury gave rise to medical indifference claim).

Negligence, inadvertence, or differences of medical opinion between the prisoner and health care providers, however, do not amount to a constitutional violation. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Lyons v. Busi, 566 F.Supp.2d 1172, 1191-1192 (E.D. Cal. 2008); see also Colwell, 763 F.3d at 1068 (distinguishing plaintiff's long-uncorrected cataracts from "a case of ordinary medical mistake or negligence" and finding defendants deliberately indifferent). Rather, "the plaintiff 'must show that the course of treatment the doctors chose was medically unacceptable under the circumstances' and that the defendants 'chose this course in conscious disregard of an excessive risk to plaintiff's health.'" Snow, 681 F.3d at 988 (9th Cir. 2012) (quoting Jackson, 90 F.3d at 332).

**V. Analysis**

For the reasons set forth below, the Court recommends denying Defendants' motion.

Mere negligence, medical malpractice, or difference in medical opinion are insufficient to establish deliberate indifference. While the findings and treatment plans of the staff at Centinela are compelling, the Court must consider what information was known and available to Defendants at the time they treated Plaintiff. Nor can the Court truly credit Plaintiff's lay assertion that a thorough examination of Plaintiff's medical record would have resulted in a different treatment plan.

However, there is a dispute as to whether Dr. Patel, on two separate occasions, demonstrated callous disregard for Plaintiff's complaints of severe back pain by refusing to review his medical records, refusing to prescribe a more powerful pain medication,

11

refusing to continue beneficial physical therapy, and in effect jumping to the conclusion that there was "nothing wrong" with Plaintiff. The same is true as to Dr. Le's arguably cavalier response to Plaintiff's complaint that he did not have full range of motion of his legs and experienced no relief from the prescribed pain medication. The cause of Plaintiff's pain and the fact that he ultimately was found not to have an infection is of no consequence. The issue is whether Defendants were deliberately indifferent to Plaintiff's pain while he was housed at WSP. It is up to a jury to decide which version of the facts to credit and whether Defendants' actions amounted to deliberate indifference.

Dr. Barnett's declaration does not support a contrary finding.[1] Dr. Barnett bases his conclusion—that the medical care Plaintiff received was appropriate—on disputed facts. He relies on Defendants' assertion that Plaintiff experienced no mobility issues, that his pain was adequately controlled by the prescribed medication, and that an MRI or specialist referral was not necessary based on Plaintiff's symptoms. Plaintiff disputes all these underlying facts. At the summary judgment stage, all disputes of fact must be decided in Plaintiff's favor.

Ultimately, a reasonable jury could find that Defendants acted with deliberate indifference by not more thoroughly responding to and exploring the cause of Plaintiff's complaints of continuing limited mobility and severe pain. Defendants are thus not entitled to judgment in their favor.

## VI. Conclusion

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 36) be DENIED.

---

[1] Plaintiff contends that "expert testimony has no place in Summary Judgment proceedings." (Opp'n at 26.) This is incorrect: Courts frequently consider expert affidavits submitted in support of or in opposition to summary judgment. See, e.g., Bulthuis v. Rexall Corp., 789 F.2d 1315, 1317 (9th Cir. 1985); Bieghler v. Kleppe, 633 F.2d 531, 533 (9th Cir. 1980) (both holding that expert testimony may be admissible on summary judgment so long as it satisfies Federal Rules of Evidence 702-705.)

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **fourteen** (14) days after being served with these Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within **fourteen** (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: August 2, 2017         /s/ *Michael J. Seng*
                              UNITED STATES MAGISTRATE JUDGE